UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMADI NNODIM,<br>        Plaintiff,<br><br>            v.<br><br>U.S. BANK TRUST<br>ASSOCIATION, Not In Its<br>Individual Capacity But<br>Solely As Trustee For LB-<br>Igloo Series IV Trust,<br>RUSHMORE LOAN MANAGEMENT<br>SERVICES, and JOHN T.<br>PRECOBB,<br>        Defendants. | No. 22-cv-11125-DLC |

**MEMORANDUM AND ORDER ON DEFENDANT JOHN T. PRECOBB'S MOTION FOR SUMMARY JUDGMENT**

CABELL, Chief U.S.M.J.

In this residential mortgage dispute, Amadi Nnodim ("Nnodim" or "the plaintiff") has brought suit against various entities in an effort to stave off the foreclosure of his home in Winthrop, Massachusetts, including (1) U.S. Bank Trust Association ("USBTA"), as Trustee for LB-Igloo Series IV Trust, which holds the mortgage and promissory note he gave to secure the property; (2) USBTA's loan servicer Rushmore Loan Management Services ("Rushmore"); and (3) USBTA's and Rushmore's attorney, John T. Precobb, Esq. ("Attorney Precobb"). Attorney Precobb moves for summary judgment, principally on the ground that the litigation

privilege bars the claims against him.  (D. 43).  For the reasons
that follow, the court agrees and grants the motion for summary
judgment.

## I.  PROCEDURAL HISTORY

The plaintiff initiated this action in June 2022 by filing a
lawsuit against USBTA in the Land Court Department of the Trial
Court of Massachusetts ("the Land Court"), which USBTA timely
removed to federal court.  (D. 1-1) (D. 1-3) (D. 14-1, p. 53).

In November 2022, the plaintiff filed the operative amended
complaint ("operative complaint"), asserting thirteen counts
against USBTA, Rushmore, and Attorney Precobb ("defendants").  In
essence, the operative complaint alleges that various mortgagees
received the plaintiff's mortgage payments but failed to credit
them to the plaintiff's accounts and damaged his credit rating.
It further alleges that when the plaintiff, then in arrears and
accorded the opportunity to pay a reinstatement, paid the entire
reinstatement amount of $55,373.41 on October 21, 2022, the
defendants deceptively and fraudulently increased the
reinstatement amount by $20,369.28 and demanded that the plaintiff
pay this amount to avoid foreclosure.  The defendants also
allegedly discriminated against the plaintiff, who is an African
American of Nigerian descent, and conspired to take his property
by not crediting his mortgage payments and by increasing the

reinstatement fee.[1]  (D. 15, ¶¶ 13-22, 36-38, 113-115).  In opposing summary judgment, the plaintiff emphasizes Attorney Precobb's involvement in the October 2022 increase, which allegedly forced the plaintiff to pay the extra amount to avoid foreclosure.

The operative complaint asserts that the defendants violated the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I ("MCRA"); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e; the Massachusetts Unfair and Deceptive Trade Practices Act, M.G.L. c. 93A, § 9; and 42 U.S.C. §§ 1985(3), 1986.  It additionally sets out Massachusetts common law claims for conversion, intentional infliction of emotional distress, breach of contract, and breach of the implied covenant of good faith and fair dealing against the defendants.  (D. 15).  The operative complaint also brings a claim against Attorney Precobb for interference with contractual or advantageous business relations.

## II.  <u>STANDARD OF REVIEW</u>

Entitlement to summary judgment requires the movant to show "there is no genuine dispute as to any material fact."  *Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 503 (1st Cir. 2022) (affirming allowance of defendant's summary judgment motion) (citation omitted).  "A fact is material if it 'might affect the outcome of

---

[1] The defendants also purportedly retaliated against the plaintiff for filing this action.  (D. 15).

the suit under the governing law.'" *Grace v. Bd. of Tr., Brooke E. Boston*, 85 F.4th 1, 10 (1st Cir. 2023) (citation omitted). "A genuine dispute as to a material fact exists if a rational factfinder, viewing the evidence 'in the light most flattering to the party opposing' summary judgment, could resolve the dispute in that party's favor." *Id.* (citation omitted).

## III.   FACTUAL BACKGROUND[2]

In 2003, the plaintiff executed a note promising to pay GMAC Mortgage Corporation ("GMAC") $280,000 and granted a mortgage on his property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for GMAC.  (D. 14-1, pp. 1-23).[3]  The mortgage gave GMAC the statutory power of sale[4] and the authority to accelerate the amount due in the event the plaintiff breached the

---

[2] In a reply brief to the plaintiff's summary judgment opposition, Attorney Precobb asks the court not to consider the plaintiff's exhibits (D. 49) and the plaintiff's opposition memorandum (D. 50) because the plaintiff filed them one day after the October 17, 2022 deadline.  (D. 51).  In light of the brief delay and the lack of prejudice to Attorney Precobb, the court will consider the filings as part of the summary judgment record.

[3] The parties did not file the note or the mortgage in connection with the summary judgment motion.  USBTA, however, filed these documents in an exhibit attached to a motion for sanctions.  (D. 14-1, pp. 30-34).  Accordingly, the court considers the note and the mortgage as part of the summary judgment record pursuant to Federal Rule of Civil Procedure 56(c)(3) ("Rule 56(c)(3)").  *See Wahlstrom v. Zurich Am. Ins. Co.*, Civil No. 19-12208-LTS, 2022 WL 20416909, at *3 n.4 (D. Mass. Aug. 17, 2022) (explaining Rule 56(c)(3) allows court to "consider other materials in the record" and rejecting argument "Court cannot consider the original answers in the context of the pending summary judgment motion"); *Mills v. Turner*, Civil Action No. 15-13267-MLW, 2017 WL 3670967, at *4 (D. Mass. Aug. 25, 2017).

[4] *See Pinti v. Emigrant Mortg. Co., Inc.*, 33 N.E.3d 1213, 1218 (Mass. 2015) ("[M]ortgagee may conduct a foreclosure by exercise of the statutory power of sale set out in [M.G.L. c. 183,] § 21," without judicial approval where mortgage gives "mortgagee a power of sale and includes by reference the statutory power.").

covenant to pay the principal and interest "when due." (D. 14-1, pp. 6, 18). Correspondingly, the mortgage allowed the plaintiff to reinstate the mortgage and avoid foreclosure after an acceleration, provided he met certain conditions. (D. 14-1, p. 16).

In 2012, MERS assigned the mortgage to GMAC Mortgage, LLC. (D. 14-1, p. 24). A number of mortgage assignments occurred thereafter. (D. 14-1, pp. 30-34). In April 2022, Rushmore sent the plaintiff a "90-Day Right to Cure Your Mortgage Default" notice identifying 24 alleged missed payments starting on September 1, 2020. The notice warned that nonpayment may result in eviction from the plaintiff's home after a foreclosure. (D. 14-1, pp. 45-47). In May 2022, USBTA obtained a military affidavit under the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, stating that the plaintiff was not in the military. (D. 14-1, p. 50).

Against this backdrop of purported missed payments and preliminary steps to exercising the statutory power of sale, Attorney Precobb entered an appearance in this case on behalf of USBTA in the Land Court on July 1, 2022. (D. 14-1, p. 55). The summary judgment record does not evidence his involvement in foreclosure or collection efforts *before* he entered his appearance in this case as USTBA's attorney.[5]

---

[5] The day before entering the appearance, Attorney Precobb emailed the plaintiff's attorney stating that he (Attorney Precobb) would accept service and that the claims lacked merit. (D. 14-1, p. 56).

On August 18, 2022, Attorney Precobb emailed the plaintiff's counsel a planned motion for sanctions under Federal Rule of Civil Procedure 11 ("Rule 11") and advised him that he had 21 days to withdraw the lawsuit or respond to the email.  (D. 48, ¶ 27) (D. 49, p. 60).  Apparently receiving no satisfactory response, Attorney Precobb filed the motion for sanctions on November 2, 2022.  (D. 14).  The court summarily denied the motion because Rule 11 does not apply to conduct in state court.  (D. 23) (quoting *Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 446 (1st Cir. 2022)).

In early October 2022, Rushmore sent the plaintiff a mortgage statement showing a reinstatement amount of $55,373.41 as of October 11, 2022.  (D. 48, ¶ 30) (D. 49, p. 41).  The document identifies the statement date as October 11 and cautions that "[p]ayments received after the statement date are not reflected." (D. 49, p. 41).  On the morning of October 21, the plaintiff's counsel emailed Attorney Precobb a copy of a certified bank check in this same amount ($55,373.41) payable to Rushmore.  (D. 43-2, ¶ 9).  At the time, a foreclosure was scheduled to take place that afternoon at 2:00 p.m.[6]  (D. 43-2, ¶ 9).  Early that afternoon by

---

[6] By affidavit, the plaintiff states that his attorney and Attorney Precobb agreed to continue the "foreclosure until November 1, 2022, to enable [the plaintiff's] attorney to attend to [a] family emergency" that necessitated overseas travel.  (D. 48, ¶ 25).  The plaintiff characterizes the defendants' decision to proceed forward with the foreclosure after his attorney's departure as "abusive, deceptive, and unfair debt collection tactics."  (D. 48, ¶ 24) (D. 50, ¶ 24).

email, Attorney Precobb informed the plaintiff's counsel that the reinstatement amount was now $73,206.59 and represented this figure as the total amount through October 21.  (D. 43-2, ¶ 9). An emailed reinstatement letter to the plaintiff's attorney from a paralegal in Attorney Precobb's law firm breaks down the fees, costs, and payments due that totaled $73,206.59.  (D. 49, pp. 46-47).  Attorney Precobb also advised the plaintiff's counsel of a new date for the foreclosure of October 26.  (D. 43-2, ¶ 9).

Later in the day on October 21, the plaintiff's counsel came to Attorney Precobb's office with the $55,373.41 certified check. (D. 43-2, ¶ 9).  While there, he paid the $55,373.41 amount with the certified check.[7]   (D. 48, ¶ 33) (D. 49, p. 44).   The plaintiff's counsel also signed a letter acknowledging that the $55,373.41 amount was not a full reinstatement of the loan.  (D. 43-2, ¶ 9).

On October 24, Attorney Precobb emailed the plaintiff's counsel an updated reinstatement amount of $75,742.69.  (D. 43-2, ¶ 9).  Attorney Precobb additionally informed the plaintiff's counsel that the difference between the $55,373.41 check and this current reinstatement amount was $20,369.28.  (D. 43-2, ¶ 9).

A series of emails ensued that same day between the plaintiff's counsel and Attorney Precobb.  Attorney Precobb's

---

[7] The plaintiff asserts that he made the payment "in protest and without waiving any of [his] rights."  (D. 48, ¶ 33).

emails employed disparaging and judgmental language, but they also addressed his interpretation of the mortgage statement and explained the increase in the reinstatement fee.   In pertinent part, one of Attorney Precobb's October 24 emails stated to the plaintiff's counsel that:

> [Y]ou have no idea what you are talking about.   You are what's wrong with the legal profession . . . All of the fees that we have incurred in defending your lawsuit . . . are fees which are properly recoverable pursuant to the terms of the Note and Mortgage.   This is why the reinstatement amount is higher, including, but not limited to, foreclosure fees and costs.

(D. 49, p. 56).   Other emails from Attorney Precobb strike a similar tone.   (D. 49, p. 52) ("I don't understand how you are able to so easily separate reality from fiction . . . Our fees are not 'invented' but are actual fees incurred in defending your frivolous law suit."); (D. 49, p. 52) ("Please stop with the ridiculous accusations . . . With regard to the 11/16/22 date in the mortgage statement[,] it refers to when a late charge will be assessed.   I already pointed out where it states the reinstatement is good through 10/11/22.   Either your client pays the difference or we foreclose.").

Two days later on October 26, the plaintiff's counsel provided a certified check for the $20,369.28 difference.   As a result, the foreclosure auction was canceled.   (D. 43-2, ¶ 9) (D. 49, p. 50).

IV.  **DISCUSSION**

Attorney Precobb argues that he is entitled to summary judgment by virtue of the litigation privilege.[8]  The litigation privilege "precludes civil liability based on communications made by" an "attorney in connection with judicial proceedings or contemplated litigation." *Bassichis v. Flores*, 189 N.E.3d 640, 642 (Mass. 2022).  Attorney Precobb argues that his statements and communications fall squarely within the scope of the privilege because they all related to this ongoing and active litigation. To that end, he repeatedly asserts that he began representing USBTA only *after* the plaintiff filed this lawsuit.  He further submits that he was acting and functioning in his capacity as an attorney for his client throughout.  Separately, he points out that the privilege is absolute and applies even when an attorney's statements are made maliciously or in bad faith.  Lastly, he argues that the breadth of the litigation privilege extends to all of the claims against him.  (D. 43, 51).

In opposing the motion, the plaintiff argues that Attorney Precobb's claims fall outside the scope of the litigation privilege because the foreclosure process, on which the plaintiff's claims against Attorney Precobb are based, are not "judicial

---

[8] Attorney Precobb also asserts other arguments with respect to some of the specific claims made against him, but it is not necessary to consider these arguments where the court finds that all claims made against him are barred by the litigation privilege.

proceedings".  He also argues that the privilege does not apply
where Attorney Precobb was reportedly counseling and assisting
USBTA and Rushmore in their business matters rather than in
relation to this judicial proceeding.  The plaintiff further argues
that the privilege does not apply because he is not suing Attorney
Precobb for his statements but rather for his misconduct, for which
the litigation privilege provides no protection.

Separately, the plaintiff seeks additional time pursuant to
Federal Rule of Civil Procedure 56(d) ("Rule 56(d)) to conduct
discovery to show that the litigation privilege does not cover
Attorney Precobb's conduct.  (D. 50).

## A.  Litigation Privilege

As noted, in Massachusetts, the litigation privilege
"precludes civil liability based on communications made by" an
"attorney in connection with judicial proceedings or contemplated
litigation." *Bassichis v. Flores*, 189 N.E.3d 640, 642 (Mass.
2022).  Attorney Precobb bears the burden of establishing
entitlement to the privilege. *See Eaton v. Veterans Inc.*, 435 F.
Supp. 3d 277, 280 (D. Mass. 2020) ("[P]arty asserting the
litigation privilege bears the burden of establishing entitlement
to it.") (citation omitted).

Massachusetts law adheres to the formulation of the privilege
in the Restatement (Second) of Torts, § 586 (1977) ("section 586").
*See Bassichis*, 189 N.E.3d at 646.  Section 586 states that:

> A*n attorney* at law *is absolutely privileged to publish defamatory matter* concerning another in communications preliminary to a proposed judicial proceeding, or . . . during the course and as a part of, a judicial proceeding in which he participates as counsel, *if it has some relation to the proceeding*.

Restatement (Second) of Torts, § 586 (1977) (emphasis added); *accord Bassichis*, 189 N.E.3d at 646 (quoting section 586). Although developed to protect attorneys from defamation suits, the litigation privilege applies "not only to defamation claims," but "to civil liability in general." *Id.* at 647 (quoting *Bartle v. Berry*, 953 N.E.2d 243, 249 (Mass. 2011)). By way of example, the privilege extends to intentional infliction of emotional distress as well as MCRA claims. *Id.*

Importantly, "[t]he privilege applies regardless of malice, bad faith, or any nefarious motives on the part of the lawyer so long as the conduct complained of has some relation to the litigation." *Id.* at 646 (citation omitted). The privilege is designed to promote "zealous advocacy" by an attorney in representing his clients. *Id.* (citing *Sriberg v. Raymond*, 345 N.E.2d 882, 884 (Mass. 1976)). Pertinent here is the principle that the duty of zealous representation implicitly recognizes "there may be occasions when, in the heat of advocacy, statements may be made that are injudicious." *Id.*

Turning to Attorney Precobb's arguments, his involvement undeniably post-dates the filing of this action by the plaintiff.

*See Bassichis*, 189 N.E.3d at 649 ("[I]t is well settled that statements made during the course of litigation are protected."); *Patriot Group, LLC v. Edmands*, 136 N.E.3d 386, 392 (Mass. App. Ct. 2019) ("[L]itigation privilege protects an attorney's statements made while 'engaged in his function as an attorney'" during litigation.). In fact, the alleged statements and communications at issue consist primarily of emails Attorney Precobb sent to the plaintiff's counsel in October 2022 during this litigation. In that vein, "statements by a lawyer, to another lawyer, advancing the legal positions of the client in the midst of a legal dispute" constitute "a paradigm of privileged conduct." *Barnes v. Johnston-Neeser*, 21-P-1088, 2022 WL 3330388, at *5 (Mass. App. Ct. Aug. 12, 2022) (collecting cases) (unpublished). Attorney Precobb's emailed statements or other communications at that time to the plaintiff's counsel thus fall precisely within the litigation privilege.

To be sure, Attorney Precobb employed some blunt and harsh prose in his emails to counsel. (D. 49, p. 56) ("[Y]ou have no idea what you are talking about."); (D. 49, p. 52) ("Please stop with the ridiculous accusation."). As he points out (D. 43, pp. 6, 8), however, he does not lose the privilege by uttering malicious statements or acting in bad faith. *See Doe v. Nutter, McClennen & Fish*, 668 N.E.2d 1329, 1332, (Mass. App. Ct. 1996) (explaining privilege applies even if "offensive statements are

uttered maliciously or in bad faith"); *accord Bassichis*, 189 N.E.3d at 646 (stating "privilege applies regardless of malice, bad faith, or any nefarious motives" by attorney).

Furthermore, the privilege extends to all of the claims brought against Attorney Precobb.  *See Bassichis*, 189 N.E.3d at 647 ("privilege applies not only to defamation claims brought against [an] attorney, but to civil liability generally").  To apply the privilege only to defamation claims, where the privilege originally developed, would render "the privilege valueless" because "an individual "would then be subject to liability under a different theory."  *Nutter, McClennen & Fish*, 668 N.E.2d at 1333; *accord Bassichis*, 189 N.E.3d at 647 (Litigation privilege "would be of little value if the individual were subject to liability under a different theory of tort.").  Accordingly, Attorney Cobb satisfies his burden to establish entitlement to the privilege.

Examining the plaintiff's arguments seriatim, they do not convince this court otherwise.  The plaintiff first contends that Attorney Precobb's involvement concerned non-judicial foreclosure proceedings.  Attorney Precobb's conduct and the statements he made, however, all took place after he filed an appearance.  Thus, he made the statements in this litigation while representing USBTA and Rushmore and arguing, albeit aggressively and at times judgmentally, for his clients.  The fact that this litigation pertains to foreclosure proceedings does not detract from the

premise that Attorney Precobb made the statements on behalf of his clients in this litigation. Although certain statements used "injudicious" language, *see Bassichis, 189 N.E.3d at 647*, they nevertheless had "some relation to" this litigation, Restatement (Second) of Torts, § 586 (1977), because they concerned, inter alia, the plaintiff's mortgage payments, a mortgage statement, and the purported amount owed.

The plaintiff next argues that Attorney Precobb was counseling USBTA and Rushmore in business matters. As support, he relies on *Kurker v. Hill*, 689 N.E.2d 833, 839 (Mass. App. Ct. 1998). The court in *Kurker* reversed a dismissal of an interference with business relations claim because the litigation privilege did not encompass "the defendant attorneys' conduct in counselling and assisting their clients in business matters generally." *Id.* Tellingly, the court rejected the litigation privilege as applied to one of the attorneys based on the attorney's argument that he represented his client in preliminary injunction proceedings. *Id.* at 839 n.8. In so doing, the court explained that the complaint "did not confine [the attorney's] involvement solely to statements or communications made in connection with the preliminary injunction proceedings." *Id.* Rather, "the complaint implicated [that attorney] in the larger scheme of the assets purchase and freeze-out." *Id*. The Massachusetts Supreme Judicial Court ("SJC") in *Bassichis* distinguished *Kurker* precisely on this basis. *See*

14

*Bassichis*, 189 N.E.3d at 652 (Attorneys in *Kurker* "provided legal advice and services in connection with the purchase and sale of corporate assets [and] their assistance was not confined to litigation" whereas attorney's actions in *Bassichis* "occurred in the context of" representing client in divorce proceeding); *see also Kerrissey v. Bruce*, Civil Action No. 21-11277-FDS, 2023 WL 5200203, at *3 (D. Mass. Aug. 14, 2023) (distinguishing *Kurker* and applying litigation privilege because "alleged wrongful actions of [Attorneys] Mitchell and Cruickshank occurred in the context of preparing for and conducting litigation—specifically, the involuntary bankruptcy proceedings").

Here as well, Attorney Precobb's conduct and communications occurred solely in the context of this litigation after the plaintiff filed suit and after Attorney Precobb filed a notice of appearance. As previously indicated, his conduct and communications had some relation to this litigation because they consist of his explanations to the plaintiff's counsel regarding the basis for the increases in the reinstatement amount and/or the import of the mortgage statement. Indeed, to repeat what the court stated in *Barnes*, "the statements at issue are a paradigm of privileged conduct -- statements by a lawyer, to another lawyer, advancing the legal positions of the client in the midst of a legal dispute." *Barnes*, 2022 WL 3330388, at *5 (collecting cases). The plaintiff's business argument based on *Kurker* fails to persuade.

Next, the plaintiff argues that Attorney Precobb's liability is based on Attorney Precobb's own misconduct and that Attorney Precobb's statements are only being used as evidence of the misconduct. In presenting the argument, the plaintiff quotes and relies on *Gillette Co. v. Provost*, 74 N.E.3d 275 (Mass. App. Ct. 2017).[9] *Gillette*, 74 N.E.3d at 284 ("privilege does not attach . . . where it is not the statements themselves that are said to be actionable," but rather the statements are used "as evidence of [the attorney defendant's] misconduct") (quoting *Swansea*, 2016 WL 5946872, at *3). The plaintiff additionally explains that he is not suing Attorney Precobb for the content of his statements. Rather, the gravamen of the claims against Attorney Precobb involve his conduct and actions, according to the plaintiff.

The court in *Gillette* drew a "distinction between speech and conduct" and concluded that the privilege applied to the content of an attorney's statements but not to the use of the attorney's statements as evidence of the attorney's misconduct. *Gillette*, 74

---

[9] In addition to citing *Gillette* for this principle, the plaintiff cites to the following cases for this same principle: *Haverhill Stem LLC v. Jennings*, 172 N.E.3d 410, 420 (Mass. App. Ct. 2021); *58 Swansea Mall Drive, LLC v. Gartor Swansea Prop., LLC*, 2016 WL 5946872, at *1 (D. Mass. Oct. 12, 2016); and *Larson v. Perry*, Civil Action No. 19-cv-10203-IT, 2020 WL 1495883, at *6 (D. Mass. Mar. 27, 2020) (quoting *Swansea*, 2016 WL 5946872, at *1). These cases all predate the decision in *Bassichis*, 189 N.E.3d at 651-652. As discussed below, *Bassichis* held that the litigation privilege "applie[d] to an attorney's *actions* during the course of a judicial proceeding" as well as to the attorney's communications. *Id.* at 652 (emphasis added).

N.E.3d at 283-284; *id.* at 284 (rejecting privilege's application "to claims that allege conduct, not speech").  The appellate court decision in *Gillette*, however, preceded the SJC's decision in *Bassichis*.  The SJC in *Bassichis* saw "no reason to distinguish between <u>communications</u> made during the litigation process and <u>conduct</u> occurring during the litigation process." *Bassichis*, 189 N.E.3d at 652 (citation omitted).  Moreover, like the plaintiff's argument here, "[t]he Court in *Bassichis* rejected a very similar argument, where the plaintiff contended that its claim was based not just upon the defendant lawyer's statements, but upon his 'conduct' in 'orchestrating' the 'scheme.'"  *Barnes*, 2022 WL 3330388, at *5 (quoting *Bassichis*, 189 N.E.3d at 652).  Concluding that *Bassichis* was controlling, the *Barnes* court likewise rejected Barnes' argument to refuse the privilege's application because the attorney defendant's statements were only evidence of the attorney's conduct.  *Id.*

The plaintiff's strikingly similar argument that the privilege does not apply to Attorney Precobb's statements because they are used as evidence of Attorney Precobb's misconduct, even if true, lacks merit because it draws a distinction between statements and conduct, a distinction the SJC has determined to be immaterial.  *See Bassichis*, 189 N.E.3d at 652 ("[W]e conclude that the litigation privilege applies to an attorney's actions during the course of a judicial proceeding, just as it does to the

attorney's communications."). Adhering to the decisions in *Bassichis* and *Barnes*, the plaintiff's argument does not forestall summary judgment.

Correspondingly, Attorney Precobb establishes, via his affidavit (D. 43-2) and other evidence in the record, that there is no genuine dispute as to any material fact that the privilege applies. His conduct and statements all fall within the scope of the litigation privilege as a matter of law.

In sum, Attorney Precobb is entitled to summary judgment on all of the claims brought against him.

**B.**   **Rule 56(d) Discovery**

To be sure, the plaintiff argues that he needs additional time to conduct discovery to adequately respond to the summary judgment motion and seeks permission under Rule 56(d) to do so. Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify [his] opposition" to a summary judgment motion, then the "court may: (1) defer considering the motion or deny it; (2) *allow time* to obtain affidavits or declarations or *to take discovery*; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d) (emphasis added). District courts are accorded a "broad measure of discretion" in assessing the need for Rule 56(d) discovery, *see Troiano v. Aetna Life Ins. Co.*, 844 F.3d 35, 45 (1st Cir. 2016) (citation omitted), but should construe motions

that invoke the rule "generously". *Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022).

A court is nevertheless "entitled to refuse a Rule 56(d) motion if it concludes that the party opposing summary judgment is unlikely to garner useful evidence from supplemental discovery." *President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, 77 F.4th 33, 41 (1st Cir. 2023). To obtain the benefit of Rule 56(d) discovery, the party opposing summary judgment "must make a sufficient proffer." *In Re PHC, Inc. S'holder Litig.*, 762 F.3d 138, 143 (1st Cir. 2014) (citation omitted). The proffer should be authoritative and timely, "and it should explain why the movant is unable currently to adduce the facts essential to opposing summary judgment." *Id.* (citation omitted). "Depending on the circumstances, 'one or more' of [these requirements] 'may be relaxed, or even excused, to address the exigencies of a particular case.'" *Emigrant Residential*, 37 F.4th at 725 (citation omitted).

Where, as here, the reason why the movant "cannot 'adduce the facts essential to opposing summary judgment,' is incomplete discovery," the movant's explanation should "set forth a plausible basis for believing that specific facts probably exist" and "indicate how the emergent facts will influence the outcome of the

pending summary judgment motion."[10]    *Id.* (internal ellipses omitted).  The plaintiff fails on both counts.

Crucially, Attorney Precobb's involvement in this dispute occurred after the plaintiff filed the lawsuit and after Attorney Precobb filed his appearance.  As also explained, the litigation privilege extends to an attorney's conduct as well as his communications provided the conduct and statements have some relation to the litigation.  *See Bassichis*, 189 N.E.3d at 646. Although discovery might uncover additional statements or conduct, it is highly unlikely that such emergent statements or conduct will lie outside the litigation privilege.  Rather, common sense instructs that all such statements and conduct necessarily would have taken place against the backdrop of the ongoing litigation. Given these circumstances, the plaintiff's generalized explanation

---

[10] The explanation should also "show good cause for the failure to have discovered the facts sooner."   *Id.*   In that vein, the plaintiff had an opportunity to conduct at least some discovery after he filed the operative complaint (November 4, 2022) and before Attorney Precobb filed the summary judgment motion (September 19, 2023).  In any event, he fails in his burden to show that such discovery was unavailable.  *See Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 22 (1st Cir. 2014) (remanding to district court to determine "whether the Attorney General has met her burden of establishing the need for additional discovery under Rule 56(d)"); *F.D.I.C. v. Key Fin. Servs., Inc.*, Civil Action No. 89-2366-DPW, 1999 WL 34866812, at *6 (D. Mass. Dec. 23, 1999) (stating "defendant has not met its burden of proving" entitlement "to additional discovery" under Fed.R.Civ.P. 56(f), Rule 56(d)'s prior version, by demonstrating, inter alia, "'good cause' for its failure to have conducted [the] discovery earlier").  Rather, the plaintiff simply attests he is "being handicapped because discovery has not been conducted in this case before this summary judgment motion." (D. 48, ¶ 18).  Attorney Precobb, however, represents that that the plaintiff never served Attorney Precobb with any discovery.  (D. 51).

that additional discovery would enable him to show that the litigation privilege does not cover Attorney Precobb's conduct is inadequate.  In all, the plaintiff fails to set out a plausible basis that specific facts probably exist regarding the litigation privilege.  He also fails to explain how those emergent facts will influentially support a successful application of the litigation privilege on summary judgment.

### C.   **The Plaintiff's Affidavit Evidence**

As a final matter, Attorney Precobb objects to the plaintiff's affidavit (D. 48) because it includes statements about the law and the plaintiff's interpretations of that law.  (D. 51).  For example, the affidavit recites that "Defendant[s] violated my civil rights by their threats, harassments, intimidations and coercion" and their conduct is "rooted in discrimination."  (D. 48, ¶¶ 14, 45).

Attorney Precobb's objection is well-taken.  A plaintiff "may not rely upon [his] own interpretation of the law or the legal conclusions [he] wishes the Court to draw from the facts at hand." *Siupa v. Astra Tech, Inc.*, Civil Action No. 10-10525-LTS, 2013 WL 4854031, at *7 (D. Mass. Sept. 10, 2013) (striking statements in plaintiff's "affidavit regarding what is 'required by Massachusetts law,' and whether certain conduct amounts to 'sexual harassment'") (ellipses omitted); *accord Mancini v. City of Providence by and through Lombardi*, 282 F. Supp. 3d 459, 466

(D.R.I. 2017) ("First Circuit . . .consistently reject[s] conclusory affidavits that lack factual specificity and merely parrot the legal conclusions required by the cause of action at the summary judgment stage."). Similarly, affidavit statements reflecting a plaintiff's "subjective speculation," such as that another employee's higher wages resulted from discrimination, do not avoid summary judgment. *Quinones v. Buick*, 436 F.3d 284, 290 (1st Cir. 2006) (discounting plaintiff's affidavit which, "like his deposition testimony, reflects only Quinones' subjective speculation and suspicion Barnes' greater earnings" resulted "from discrimination").

Here, the court considered the statements in the affidavit that set out facts based on the plaintiff's personal knowledge. *See* Fed.R.Civ.P. 56(c)(4). However, multiple paragraphs in the plaintiff's affidavit are deficient under the above principles and, as such, have not been considered, and do not preclude summary judgment. *See, e.g.*, (D. 48, ¶ 21) ("I was singled out and treated differently, unfairly, with discrimination, with deception, and in violation of the Massachusetts General Laws, Chapter 93A, and the other laws."); (D. 48, ¶ 23) ("Defendants are debt collectors as defined by the Fair Debt Collection Statute."); (D. 48, ¶ 38) ("When I say Defendants in this affidavit, Defendant John Precobb is part and parcel of the Defendants and one of the Defendants, and they all worked against me."); (D. 48, ¶ 46) ("Defendants acted

to retaliate against me for filing this civil action and for seeking redress in a court of law.").

In conclusion, the litigation privilege bars the claims against Attorney Precobb.  The plaintiff fails to make a sufficient Rule 56(d) proffer.  Having also considered the facts that are based on the plaintiff's knowledge in the plaintiff's affidavit, they do not preclude summary judgment.

**V.** **CONCLUSION**

In light of the foregoing discussion, the motion for summary judgment (D. 43) is **ALLOWED**.  Attorney Precobb is accordingly dismissed as a party to this lawsuit.

<pre>
                          /s/ Donald L. Cabell
                     DONALD L. CABELL, Chief U.S.M.J.
</pre>

DATED:  November 22, 2023